Fries, Respondent, vs. Lallier, Appellant.

*October 9—November 5, 1935.*

For the appellant there was a brief by *Sutherland, Hughes & Sutherland* of Fond du Lac, and oral argument by *A. D. Sutherland*.

*John P. McGalloway* of Fond du Lac, for the respondent.

FAIRCHILD, J.    The fact is established that respondent was operating the machine, at the time of his injury, as an employee of the appellant.    The machine is designed to cut tops off of vegetables such as carrots and beets.    It was mounted on a four-wheel truck, and is made up of a metal frame with a hopper four or five feet long and two feet wide, with slanting sides eight or ten inches high.    At the bottom of this hopper are two parallel rollers running lengthwise, set close together.    One roller is grooved, and one is smooth.    These rollers are placed and geared so as to revolve inward, thus constructing a cutting device which would either pinch or cut off the leaves of the vegetables.    The rollers were moved by means of a belt, and the power was supplied by a gasoline engine connected with the wheel on which the belt revolved.    The sides of the hopper were constructed solidly and fitted into the frame.    The rollers are plainly visible to one standing along the side of the hopper, and turn toward each other as in the ordinary wringer.    The hopper has the appearance of a trough.    The vegetables are dumped in the end nearest the engine, and pass over the

rollers to the other end which is open, where they fall into baskets. The operator was furnished with a stick with which to move the material in the machine. It was his duty to see that the baskets, when filled, were emptied into bags. It was while leveling the basket that respondent's left hand was injured. This happened after he had his hand on the side of the hopper and leaned over to his right toward the basket. His claim is that, by reason of excessive vibration or "jumping of the machine," his hand came in contact with the rollers, and he lost the middle and index fingers near the middle joint, the tip of the ring finger, and sustained permanent injuries to his thumb.

The evidence with relation to the jumping or excessive vibration of the machine, and the cause thereof, raised a jury question as to whether the machine was so placed as to make it as safe and free from danger to the operator as the nature and place of employment did reasonably permit. If the "jumping" happened because the machine was not properly blocked, a cause of action must be held to exist, unless the negligence of respondent is of such proportion as to deprive him of a right to recover. Evidence bearing on this question was the only evidence upon which the jury should have been permitted to pass. And the questions of the special verdict should have been limited to that proposition. Had the evidence been thus confined, the necessity for further proceedings in the trial court would not exist. However, on the trial there was considerable evidence introduced by way of a comparison of corn shredders and silo fillers with this machine, particularly with relation to safety devices. Corn shredders are objects of statutory regulation, and require automatic feed devices and other safety devices. Much emphasis was placed upon the failure to have hand or foot levers, or switches conveniently placed so as to be of use to one who had gotten his hand into the rollers. A re-

view of the evidence shows that a foot lever, switch, or cutout would not have prevented this accident. As soon as the hand got into the rollers, the damage was done. Respondent did have a glove on, and the rollers tugged and held the hand, but there is no evidence that the rollers did any damage after catching the fingers, and before the machine was stopped. Typical of the testimony of those who were called by the respondent in support of his case is that of Mr. Mertes. He was asked: "Well, once the fingers are in the rollers, the damage is done, isn't it?" This was answered in the affirmative. Asked: "So that reversing the rollers wouldn't prevent any damage?" The witness continued: "If the boy's hand was in between the rollers so tight that the belt was slipping it wouldn't prevent any further injury by reversing the rollers." Respondent himself testified: "After my fingers got caught the rollers stopped and the belt slipped."

The case was submitted to the jury on this question, "Was the hopper in question as free from danger to the life, health, and safety of the operator of the machine as the nature and place of employment would reasonably permit?" and the jury were instructed as follows:

"The statutes of this state ordinarily referred to as the safety statute provides that every employer shall furnish a place of employment which shall be safe for employees therein, or frequenters thereof, and shall furnish and use safety devices and safeguards and shall adopt and use methods reasonably adequate to render such employment and place of employment safe, to the final end that all reasonable care shall be taken on the part of the employees and frequenters. This statute just read to you imposes an absolute duty to make the place as safe as the nature and place of employment will reasonably permit."

The objection to the form and substance of the question and the instruction arises because of the evidence which was

introduced with relation to switches, cutouts, and foot levers. We are of the opinion that it was misleading and amounts to prejudicial error. When the evidence closed, it clearly appeared that the failure to supply switches and other devices in no way contributed to the injury. Yet the jury had before them evidence of a failure to supply switches as well as evidence tending to show a failure to properly block and steady the machine. Under the question submitted and the instruction given, it becomes impossible to determine whether the jury made their findings of an unsafe place of employment because they believed more and better switches were necessary, or because the machine was not properly steadied.

Judgment must be reversed, and the cause remanded for a determination by the jury as to whether or not there was a failure by appellant to make the place of employment as free from danger to the safety of the operator of the machine as the nature and place of employment reasonably permitted, because of a failure to block and steady the machine; whether this was a proximate cause of the injury; and whether the respondent's negligence was greater or less than appellant's.

*By the Court.*—Judgment reversed, and cause remanded with directions to grant a new trial.